IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIDGEPORT PAIN CONTROL CENTER, LTD., on behalf of itself and a class, ) ) ) ) | |
| Plaintiff, ) | 08 C 560 |
| ) | |
| v. ) | Judge Grady |
| ) | Magistrate Judge Ashman |
| DOCTOR'S ASSISTANCE CORPORATION, and JOHN DOES 1-10, ) ) ) ) | |
| Defendants. ) | |

## AMENDED COMPLAINT – CLASS ACTION

## MATTERS COMMON TO MULTIPLE COUNTS

### INTRODUCTION

1.      Plaintiff Bridgeport Pain Control Center, Ltd. brings this action to secure redress for the actions of defendant Doctor's Assistance Corporation, in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

2.      The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

**PARTIES**

3. Plaintiff Bridgeport Pain Control Center, Ltd. is a corporation with offices in Chicago, Illinois, where it maintains telephone facsimile equipment.

4. Defendant Doctor's Assistance Corporation is a corporation that has offices at 7252 University Avenue, La Mesa, CA 91941.

5. Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction under 28 U.S.C. § 1331. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005).

7. Personal jurisdiction exists under 735 ILCS 5/2-209, in that defendants:

   a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

   b. Have transacted business in Illinois.

**FACTS**

8. On Oct. 15, 2007, plaintiff Bridgeport Pain Control Center, Ltd. received the unsolicited fax advertisement attached as <u>Exhibit A</u> on its facsimile machine.

9. Discovery may reveal the transmission of additional faxes as well.

10. Defendant Doctor's Assistance Corporation is responsible for sending or causing the sending of the faxes.

11. Defendant Doctor's Assistance Corporation, as the entity whose products

or services were advertised in the faxes, derived economic benefit from the sending of the faxes.

12. Plaintiff had no prior relationship with defendant and had not authorized the sending of fax advertisements to plaintiff.

13. The faxes have a "remove" number at the bottom that is associated with the mass broadcasting of advertising faxes.

14. On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

15. On information and belief, defendants have transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

16. There is no reasonable means for plaintiff or other recipients of defendants' unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

17. Furthermore, the "opt out notice" required by the TCPA even when faxes are sent with consent or pursuant to an established business relationship was not provided in the faxes at issue.

### COUNT I – TCPA

18. Plaintiff incorporates ¶¶ 1-17.

19. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

20. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

> **A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**
>
> > **(A)  an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**
> >
> > **(B)  an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or**
> >
> > **(C)  both such actions.**
>
> **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

21.   Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, in the form of paper and ink or toner consumed as a result.  Furthermore, plaintiff's statutory right of privacy was invaded.

22.   Plaintiff and each class member is entitled to statutory damages.

23.   Defendants violated the TCPA even if their actions were only negligent.

24.   Defendants should be enjoined from committing similar violations in the future.

### CLASS ALLEGATIONS

25.   Plaintiff brings this claim on behalf of a class, consisting of (a) all persons (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), and on or before a date 20 days following the filing of this action, (c) were sent faxes by or on behalf of defendant Doctor's Assistance Corporation promoting its goods or services for sale (d) and who did not (according to defendant's records) either (i) have an established business relationship

with defendant Doctor's Assistance Corporation or (ii) expressly consent to the receipt of advertising faxes from defendant Doctor's Assistance Corporation, and in either case were also provided an "opt out" notice that complies with federal law.

26. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

27. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions include:

    a. Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b. The manner in which defendants compiled or obtained their list of fax numbers; and

    c. Whether defendants thereby violated the TCPA.

28. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

29. A class action is an appropriate method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

30. Several courts have certified class actions under the TCPA. <u>Travel 100</u>

Group, Inc. v. Empire Cooler Service, Inc., 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); Rawson v. C.P. Partners LLC, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc., 50 P.3d 844 (Ariz. App. 2002); Core Funding Group, LLC v. Young, 792 N.E.2d 547 (Ind.App. 2003); Nicholson v. Hooters of Augusta, Inc., 245 Ga.App. 363, 537 S.E.2d 468 (2000) (private class actions); see State of Texas v. American Blast Fax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001) (state enforcement action).

        31.    Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

        WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.    Actual damages;

    b.    Statutory damages;

    c.    An injunction against the further transmission of unsolicited fax advertising;

    d.    Costs of suit;

    e.    Such other or further relief as the Court deems just and proper.

        s/ Daniel A. Edelman
        Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather A. Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th floor

Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)


T:\20853\Pleading\Amended Complaint_Pleading.wpd

## **NOTICE OF LIEN**

        Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.

                                                <u>s/ Daniel A. Edelman</u>
                                                Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
      & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

# EXHIBIT A

# Doctor's Assistance Newsletter  October 2007



# New! "Local Insurance Changes"

By Jeff Ribera

You lose $95,000.00 per year because:

- **You are not being paid within the 30 days required by law.**

- You are losing $12,500 a year on average by not getting paid for requests for more information.

- **You are losing $17,500 a year by not getting paid for narrative reports.**

- You are losing $15,000 a year by insurance companies charging you back for claims previously paid.

- **You are losing $22,000 a year by not properly asking for payment at the time of treatment.**

- You are losing $28,000 a year by failing to collect easily on past due accounts.

## Why?

Why is it ok for you to lose this money? *It isn't.* You just don't know how to prevent it.

That lack of knowledge is bleeding your practice white. Are you to blame? Only if you *bury your head* in the sand.

Now is the time to *draw a line* in the sand. No more losing $95,000.00 a year senselessly?

## Quick Tips

First, the plaque on the wall saying "Payment is due at the time of service" means nothing. In fact it's *worse* than useless. Staff members *think* it works, but it *doesn't*. Here's what *does* work:

1. **The master checklist for patient and insurance collections.**

2. The *one best* way to ask for payment at the time of treatment.

3. **Exactly what to say in the comment field to ensure claims get paid in 30 days from now on.**

4. The exact word for word complaint letter that gets immediate payment from insurance companies.

5. **The pre-printed sticker that brings in $12,500 per year on requests for more information.**

6. The secret letter that forces insurance companies to send you $350 on *every* written narrative. You lose $17,500 each year you don't use it.

7. **The *only* way to respond to insurance company refund demands. It is *proven* to stop them dead in their tracks.**

There is *only one source* for all this practice help. It is the Doctor's Assistance Corporation Seminar. The good news is that there is one upcoming in the area soon. The bad news is it will not be repeated this season.

Your practice receptionist needs help. If only she learns what to do she can stop these money leakages.

Read over the enclosed information and decide on going. I strongly recommend this program.

© Doctor's Assistance Corporation. This fax sent with full permission of recipient.
To be removed from newsletter, call (800) 915-2571 Ext# 36830

# Doctor's Assistance Newsletter
*October 2007*

## "Local Insurance Changes"

Check the benefits most important to you:

- ☐ **Immediate Payment** on past due accounts – without calling or even sending another bill – you'll **fall off your chair** when you learn this one!

- ☐ How to make all insurance companies pay within 30 days – Automatically

- ☐ Why you NEVER have to wait while your claim is "in review." Do the **one thing** that works to get immediate payment.

- ☐ How to get $35 **each time** an insurance company asks for "more information."

- ☐ If an insurance company pays you less than your fair fee its tough luck right? Wrong! That's what they **want** you to think.

- ☐ The ONE, most important thing to do to have patients pay at the time of treatment – works like a charm.

- ☐ Patient says:
   "I forgot my checkbook"
   "Your fees are too high"
   "My wife handles all the bills"
   "I didn't order those tests"
   "All I have to do is to pay $5 a month"
   "Do what you gotta do"
   "I want to talk to the Doctor"
   "My insurance company says you're overcharging"
   "The check is in the mail"
   "Bill my Ex, he's responsible"

   The **only** proven way to tactfully handle stalls and put-offs.

- ☐ How to get **$350** for Narrative Reports – works every time – no kidding!

- ☐ *Lies* you are told when you request the status of your claim. Exactly **what to say** to short circuit the run-around and get paid immediately!

- ☐ What insurance companies DON'T want you to know. Privileged information revealed from ex-claims processors.

- ☐ How to verify insurance and amount paid on deductible in 15 seconds flat. (True!)

- ☐ Exactly word-for-word what to say to **flood your practice with income** from past due accounts (proven nationwide).

- ☐ Patient skipped town. Out of luck, right? Wrong! Track them down by computer for less than $5.

- ☐ The technique to bring in a deluge of cash so quickly, it's **astonishing** that 99% of all practices have never learned it!

- ☐ Claims adjuster says: "It's in review" "The computer is down" "We've moved" "Our budget is used up" "It's in progress" "We're backlogged" "We lost your claim" "You overcharge"

- ☐ The law is on your side. But if you don't know what to do you get victimized. The **proven** ways to handle each of the above stall tactics.

- ☐ Accused of overcharging? BALDERDASH! The UCR fallacy finally revealed.

*Includes:*
What to do when an insurance company demands a refund!

- ☐ The 3 **Brutal Mistakes** nearly every receptionist makes when collecting fees. (They're not what you think.)

- ☐ How to turn your staff's "resistance" to collecting fees into **your advantage** now! (And how much you **lose each month** if you don't).

### Guarantee:
You will get back 10 times the cost of the seminar within 60 days or your money back. Period.

**FREE Admission** for the third member of your staff to attend:

If you planned on attending or you want to attend, either yourself or multiple members of your staff, please call **(800) 837-4472** within 24 hours.

**Your registration information**
Registration Fee: $227 per person
3rd and 6th persons from your practice are free. ($277 at the door)
All seminars 8:30 AM to 12:30 PM.

**Call within 24 hours:**
**Doctor's Assistance Corporation**

"The nation's largest healthcare collection seminar company."

## (800) 837-4472

© Doctor's Assistance Corporation. This fax sent with full permission of recipient.
To be removed from newsletter, call (800) 915-2571 Ext# 36830